UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUIS DE SOUSA,<br>    Plaintiff<br>  v.<br><br>EMBASSY OF THE REPUBLIC OF ANGOLA,<br><br>    Defendant. | Civil Action No. 16-367 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

  The plaintiff, Luis de Sousa, who is proceeding *pro se*, filed this action against the defendant, the Embassy of the Republic of Angola, alleging in the operative Amended Complaint that the Embassy, through its diplomatic staff and some of its local employees, engaged in "theft," Amended Compl. ¶¶ 38, ECF No. 40-1; "defamation," *id*. ¶¶ 39, 65, and caused "emotional distress," *id*. ¶¶ 36, 40, 41, 44, 62; stemming from the plaintiff's alleged provision of "party services," *id*. ¶ 29, and construction and air conditioning work on the Embassy building, *id*. ¶¶ 11, 19, ECF No. 1, for which two invoices, totaling $160,726.61, remain unpaid by the defendant, *id*. ¶¶ 59-60, as part of the overall $360,000,000 in relief he seeks, *id*. ¶ 68. The plaintiff further alleges that, as a result of his filing of this lawsuit in February 2016, his family in Angola has been threatened with "serious consequences" if he did not "drop the case." *Id.* ¶ 34. [1]

---

[1]  The plaintiff moved to amend his Complaint on July 5, 2016, Pl.'s Mot. Amend, ECF No. 31, which motion should be "freely given," unless a reason exists for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); see also FED. R. CIV. P. 15(a)(2). The defendant has interposed none of those reasons warranting denial of the motion nor, in fact, opposed the motion. Consequently, the plaintiff's motion to amend the complaint is granted, as conceded. *See* LCvR 47 (providing that if a party does not respond "[w]ithin 14 days of the date of service" of a motion, "the Court may treat the motion as conceded"). The plaintiff's subsequent request to amend his complaint to change the title from "New Complaint" to "Amended Complaint," Pl.'s Errata, ECF No. 40, amounts to an insignificant change of no substance and is also granted.

After his first effort to serve the Embassy was quashed, Order, dated May 27, 2016 ("May 2016 Order"), ECF No. 14, the plaintiff again attempted service on the Embassy, which has responded by raising further challenges to the effectiveness of service. *See* Def.'s Mot. Quash ("Def.'s 2nd Mot. Quash"), ECF No. 39. Meanwhile, the plaintiff has busily persisted in seeking recompense for his claimed injuries by seeking entry of default judgment against the Embassy, *see* Pl.'s Mot. Default J., ECF No. 38, [2] and by filing multiple, nearly identical motions to attach various property belonging to the Embassy, including a bank account and real property, *see* Pl.'s Mot. Attach Bank Account, ECF No. 20; Pl.'s Mot. Attach 2100 16th St NW, Washington, DC, 20009, ECF No. 23; Pl.'s Mot. Attach 2108 16th St NW. Washington, DC, 20009, ECF No. 24.[3] For the reasons set forth below, the pending motions by the Embassy to quash service and by the plaintiff for default judgment and attachment of the Embassy's purported assets are denied.[4]

I.   **BACKGROUND**

The plaintiff's first effort to effect service on the Embassy consisted of a person hand-delivering a copy of the original Complaint to "Marline" at the Embassy at 2108 16th Street,

---

[2] The plaintiff filed a form document provided by the Clerk's office, entitled "Affidavit for Default Judgment," which the Court construes as a motion for default judgment. This motion is denied as premature since, at the time the motion was filed, the defendant's time for filing a responsive pleading had not expired. *See* 28 U.S.C. § 1608(d) ("In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.").

[3] The plaintiff filed five motions to attach Embassy property but no longer pursues two of those motions to attach the Ambassador's residence, Pl.'s Mot. Attach 9 Staplesford Hall Ct, Potomoc MD, 20854, ECF No. 22, or the Embassy's vehicles, Pl.'s Mot. Attach Vehicles, ECF No. 21. *See* Pl.'s Reply Supp. Attach Mots., ECF No. 29 (stating plaintiff "no longer requires the attachment of the ambassador [sic] official residence as a respect for the position and the vehicles as well."). Consequently, those two motion are denied as moot.

[4] Both parties also seek leave to file surreplies. The plaintiff's unopposed motion to file a surreply, Pl.'s Mot. File Surreply, ECF No. 43; Def.'s Resp. Pl.'s Mot. File Surreply, ECF No. 44, is granted, but the Embassy's motion to file a surreply regarding the plaintiff's attachment motions, Def.'s Mot. File Surreply, ECF No. 32, is denied as moot, since the requested surreply would not alter the resolution of this issue. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (noting that District Court has discretion to deny leave to file a surreply); *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011) (same).

NW, Washington, D.C.  *See* Proof of Service, ECF No. 2.  The Embassy moved to quash service, citing the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602 *et seq.* and claiming that hand delivery did not constitute a form of "valid service under Section 1608(a) of [the FISA]."  Def.'s Mot. Quash ("Def.'s 1st Mot. Quash"), ECF No. 8.  The plaintiff conceded that he had not complied with the requirements of the FSIA, Pl.'s Resp. Def.'s 1st Mot. Quash at 2, ECF No. 12, and the Embassy's motion to quash was granted, while the Court directed the plaintiff to "effect service in accordance with the requirements of 28 U.S.C. § 1608."  May 2016 Order.

In compliance with the Court's direction on proper service, the plaintiff submitted to the Clerk of Court an affidavit requesting the mailing of relevant documents to the head of ministry of foreign affairs for Angola, Pl.'s Aff. Req. Foreign Mailing, dated May 31 2016 ("Pl.'s May 2016 Aff."),  ECF No. 15, and, the same day, the Clerk of Court certified that "one copy of the summons, complaint, and notice of suit, together with a translation of each into the official language of the foreign state" had been sent to the "head of the ministry of foreign affairs [of Angola], . . . pursuant to the provisions of 28 U.S.C. § 1608(a)(3)," *see* Cert. of Mailing ¶ 2, ECF No. 16.  After delivery, the plaintiff submitted a Notice of Completed Service to which he attached a "proof-of-delivery" from FedEx, which noted that the package had been successfully received at the destination and had been signed for and accepted by "S.RRUBRICA."  Notice of Completed Service at 3, ECF No. 25.

The Embassy again seeks to quash service of the complaint, claiming that the plaintiff's "attempted service has not satisfied the strict requirements of Section 1608(a)" and that the Embassy "never received Plaintiff's FedEx package."  *See* Def.'s Mem. Supp. 2nd Mot. Quash at 3-5, ECF No. 39-1.  In support of this assertion, the Embassy provided the affidavit of an employee at the Embassy, who stated that he "personally travelled to Luanda, Angola, . . . made

diligent inquiries at the Ministry of Foreign Affairs . . . [and] that the Ministry has no record of having received any" package from De Sousa. *Id.* Ex. 1, Aff. of Frederico Da Silva ("Da Silva Aff."), at ¶ 5, ECF No 39-3.  In response, the plaintiff submitted his own affidavit in support of the contention that he sent the proper documents and that they were received, citing to the signed confirmation of delivery from FedEx, as well as the Clerk of Court's certification that the package had been sent.  Pl.'s Opp'n Def.'s 2nd Motion Quash Ex. 1, Aff. of Louis De Sousa, dated August 21, 2016 ("Pl.'s Aug. 2016 Aff.") at 3-5, ECF No 41-1.

The Embassy's motion to quash service and the plaintiff's motions to attach Embassy property are ripe for resolution.

## II.   LEGAL STANDARDS

This section reviews the legal standards relevant to the Embassy's challenge to the sufficiency of service and the plaintiff's motions to attach Embassy property.

### A.  Serving A Foreign State

Federal Rule of Civil Procedure 12(b)(5) requires that a motion asserting the defense of "insufficient service of process," be made before filing a responsive pleading, FED. R. CIV. P. 12(b)(5), (h), and incorporates the procedural requirements for proper service that are set out in Rule 4.  As a procedural matter, the manner of serving "[a] foreign state or its political subdivision, agency, or instrumentality" is governed by the FSIA, 28 U.S.C. § 1608.  FED. R. CIV. P. 4(j); *see also Barot v. Embassy of the Republic of Zam.*, 785 F.3d 26, 27 (D.C. Cir. 2015).

The FSIA provides two avenues to serve a foreign sovereign, depending on the type of entity to be served.  A "foreign state or [its] political subdivision" must be served pursuant to 28 U.S.C. § 1608(a), while "an agency or instrumentality of a foreign state" must be served pursuant to 28 U.S.C. § 1608(b).  Courts have uniformly found that embassies are "integral

4

part[s] of a foreign state's political structure," *Transaero*, 30 F.3d at 151, and therefore appropriately considered "foreign states" for FSIA purposes. *See Barot*, 785 F.3d at 27 (directing, without discussing issue, district court to "permit [plaintiff] . . . to effect service" on defendant Embassy of Zambia in Washington, D.C. "in compliance with section 1608(a)(3)"); *Howe v. Embassy of It.*, 68 F. Supp. 3d 26, 33 (D.D.C. 2014) ("[T]he Embassy of Italy in Washington, D.C., is an 'integral part of a foreign state's political structure,' making it a 'foreign state' for the purposes of the FSIA, subject to the service requirements of 28 U.S.C. § 1608(a)." (quoting *Transaero*, 30 F.3d at 151)); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136, 140 (D.D.C. 2012) (accepting parties' concession that foreign embassy in Washington, D.C., was "foreign state" for the purposes of the FSIA); *Int'l Rd. Fed'n v. Embassy of Dem. Rep. Congo*, 131 F. Supp. 2d 248, 250 (D.D.C. 2001) (holding embassy of foreign state in Washington, D.C., a "foreign state" for the purposes of the FSIA and collecting cases).

Section 1608(a) contains four hierarchical methods of service, which are to be followed in descending order of preference, that is to say, a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012); *see also Barot,* 785 F.3d at 27 (outlining § 1608(a)'s "methods of service in descending order of preference"); *Opati v. Republic of Sudan*, 978 F. Supp. 2d 65, 67 (D.D.C. 2013). The preferred method is "delivery of the summons and complaint 'in accordance with any special arrangement for service between the plaintiff and the foreign state.'" *Opati,* 978 F. Supp. 2d at 67 (quoting 28 U.S.C. § 1608(a)(1)). Absent such an arrangement, plaintiffs may follow the methods delineated in "an applicable international convention on the service of judicial documents," 28 U.S.C. § 1608(a)(2), or, failing that, by arranging for the Clerk of the Court to "address[] and dispatch[]" the

"summons[,] . . . complaint[,] and a notice of suit" along with versions of the documents translated into the "official language of the foreign state, by any form of mail requiring a signed receipt, . . . to the head of the ministry of foreign affairs of the foreign state concerned," 28 U.S.C. § 1608(a)(3).  As a last resort, a plaintiff may "request that the clerk of the court dispatch" the same documents required by 28 U.S.C. § 1608(a)(3) to the United States Secretary of State, who will then transmit the documents to the foreign state through diplomatic channels. 28 U.S.C. § 1608(a)(4).

When sufficiency of service is challenged, the burden is on the plaintiff to demonstrate that service has been effected properly.  *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (noting that "the plaintiff has the burden to demonstrate that the procedure employed" to serve defendant "satisfies the requirements" of proper service) (internal quotation marks omitted); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (4th ed. 2016) ("[T]he party on whose behalf service of process is made has the burden of establishing its validity.").

      **B.**    **Attachment of Foreign Property within the United States**

Under the FSIA, property of foreign states in the United States is generally "immune from attachment," 28 U.S.C. § 1609, but may be subject to pre-judgment attachment when the property is used "for a commercial activity in the United States" and (1) the foreign sovereign has explicitly waived its immunity from pre-judgment attachment, and (2) the attachment is to satisfy a judgment "that has been or may ultimately be entered against the foreign state," 28 U.S.C. § 1610(d).  *See NML Capital, Ltd. v. Republic of Arg.*, 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug. 3, 2005) ("The FSIA makes a distinction between pre- and post-judgment attachments in aid of execution, addressing the two remedies separately.  While section 1610(a)

governing post-judgment attachments in aid of execution allows for an implicit or explicit waiver of immunity, section 1610(d), governing pre-judgment attachments requires an explicit waiver." (internal citation omitted)).

The explicit waiver requirement for pre-judgment attachment under §1610(d) requires that waiver "be explicit in the common sense meaning of the term: the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country." *S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir.1983); *see Pine Top Receivables of Illinois, LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 985 (7th Cir. 2014) (citing *S &S Machinery); Frank v. Commonwealth of Ant. & Barb.*, No. 15-10717, 2016 WL 6884909, at *5 (5th Cir. Nov. 22, 2016) (holding that explicit waiver requires "an intentional and knowing relinquishment of [a] legal right"); *see also Flanagan v. Islamic Republic of Iran*, No. CV 10-1643, 2016 WL 3149560, at *28 (D.D.C. June 3, 2016) (citing *Pine Top Receivables*). While the DC Circuit has not addressed the issue directly, in analogous circumstances, the Circuit has held that a "foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *see also Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100 n. 10 (D.C. Cir.1982) (holding that under the FSIA, Congress contemplated waivers of a "specific and explicit nature").

## III. DISCUSSION

The Embassy's challenge to the service of process is addressed first before turning to the plaintiff's efforts to attach Embassy property.

**A. Service of Process Was Effective under § 1608(a)(3)**

As the Court previously held, the Embassy "in this case must be served pursuant to § 1608(a)," May 2016 Order at 3, and, further, "neither of the first two methods [of service under § 1608(a)] are available in this case, and [] the plaintiff, therefore, is required to first attempt to effectuate service pursuant to the third method, provided in § 1608(a)(3), and then, if service cannot be made in that manner, pursuant to the fourth method, provided in § 1608(a)(4)," *id*. at 4. In this case, the plaintiff employed the third method set out in 1608(a)(3), by arranging for the Clerk of the Court to send the summons and complaint, along with the documents translated into the official language of Angola to the head of the ministry of foreign affairs of Angola located in Luanda, Angola.  *See* Pl.'s May 2016 Aff.; Clerk's Office Certificate of Mailing, ECF No. 16; Pl.'s Notice of Completed Service, ECF No. 25 (attaching FedEx "proof-of-delivery" that documents from the Clerk's Office were delivered on June 6, 2016 at 8:57 a.m. to "Head of the Ministry Offore, Edifficioll-Run Major Kanhangulo, Luanda Angola 1233 AO," signed for by "S.RRUBRICA").

The Embassy does not dispute that the address to which the package was sent was correct or dispute the authenticity of the Clerk's Office Certificate of Mailing or the plaintiff's Notice of Completed Service, with the attached documentation from FedEx.  Instead, the Embassy raises two objections to the process used as support for its argument that the plaintiff has failed to effectuate service as required under § 1608(a)(3):  (1) Angola has been unable to locate any record of having received the documents dispatched by the Clerk; and (2) the plaintiff sent the wrong documents when attempting to serve process.  *See* Def.'s Mem. Supp. 2nd Mot. Quash at 5-9.[5]  Both arguments fail.

---

[5]  The Embassy also challenged the plaintiff's "Notice of Completed Service" for not including a signed receipt as required by the FSIA. Def.'s Mem. Supp. 2nd Mot. Quash at 6-7. In response, the plaintiff filed a signed

### 1. Plaintiff Has Met His Burden of Proof that the Embassy Received the Package.

The Embassy relies on an affidavit from an Embassy employee in Washington, D.C. to support its claim that the FedEx package was not received. Da Silva Aff. at ¶ 5 (stating that "the Ministry has no record of having received any such Federal Express package"); *id*. at 10 (Letter, dated "4 August 2016" to Ambassador of the Republic of Angola from Director, Ministry of Foreign Affairs, stating "Examining our files, we report that the Ministry of Foreign Affairs doesn't have any record of receipt of the file pertaining to" the "Subject: Legal Proceedings Against the Embassy."). Moreover, the Embassy claims that "after diligent inquiry," it was "unable to identify who, if anyone, at the Ministry may have signed for the ostensible delivery." Def.'s Reply at 5. The Embassy speculates that the Clerk's Office package may have been "merely left in the Ministry mail room." *Id*. at 6-7 (citing *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 68 (D.D.C. 2007) (holding that service sent by way of mail without a signed receipt and "left in the mailroom" of an embassy amounted to improper service under §1608(a)(3)).

The fact that the Angolan Ministry of Foreign Affairs may be unable to locate the documents sent by the Clerk's Office may be more reflective of gaps in its own record-keeping than a failure of service, given the certification by the Clerk's Office that the documents had been dispatched and the FedEx delivery receipt with a signature from the individual who accepted the package at the Ministry of Foreign Affairs. *See* Pl.'s Opp'n Def.'s 2nd Mot. Quash, Ex. 1 at 2, ECF No. 41-2. The proof provided by the plaintiff satisfies the requirements of §

---

FedEx receipt for the package dispatched by the Clerk of the Court, Pl.'s Opp'n Def.'s SecondMot. Quash, Ex. 1, ("FedEx Receipt"), ECF No. 41-1, and as a result, the Embassy concedes that the plaintiff has remedied any noncompliance related to the signed copy requirement. *See* Def.'s Reply Supp. 2nd Mot. Quash ("Def.'s Reply") at 2, ECF No. 42.

1608(a)(3) and speculation by the Embassy about what may have happened to the package does not defeat otherwise clear evidence that the package was delivered to the Ministry of Foreign Affairs at the correct address and properly signed as received. The statute does not require more.

In similar circumstances, another Judge on this Court reasoned that plaintiffs had provided more than sufficient evidence of compliance with §1608 and that requiring more "would not only appear to be an exercise in redundancy, but it also would thwart the explicit congressional preference for service by mail whenever possible." *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006). In *Abur*, two defendant foreign countries, claimed improper service under § 1608(a)(3), and in response, the plaintiffs provided, as proof of proper service, certification from the Clerk of Court, signed receipts from a commercial courier service, and delivery logs with a recipient's signature in one instance and a stamp or seal in the other instance, for the mailed documents. *Id.* The court concluded that such evidence was sufficient to demonstrate plaintiff's compliance with § 1608(a)(3) and, despite the defendants' contention that the packages were not actually received, the "active participation on the part of both the dispatcher and the recipients demonstrated that the plaintiff had fulfilled the core function of service, which is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Id* at 173 (citing *Henderson v. United States*, 517 U.S. 654, 671 (1996) (quotation marks omitted)). Such reasoning is equally compelling here. The plaintiff has provided sufficient evidence of compliance with 1608(a)(3) and the Embassy's "active participation" in this litigation demonstrates satisfaction of "[t]he core function of service." *Id.*

The cases cited by the Embassy do not alter this conclusion. While refusal by an embassy to accept a package may defeat service under § 1608(a)(3), s*ee Ben-Rafael v. Islamic*

*Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008) (noting that refusal to accept service under 1608(a)(3) makes such service ineffective); *Opati*, 978 F. Supp. 2d at 67 (noting service is "unsuccessful" where mailings are refused by foreign state); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 67 (D.D.C. 2010) (holding that refusal of service under Section 1608(a)(3) meant service was done "to no avail"); *Flanagan*, 2016 U.S. Dist. LEXIS 72331, at *21 (deeming service ineffective because service was refused), the Embassy did not refuse the package in this case.  Instead, the proof in this case demonstrates that the package was signed for and this signature shows that the package, and thus service, was accepted.

### 2. Plaintiff Sent the Operative Complaint at the Time of Service

Despite claiming never to have received the package, the Embassy also contends that the plaintiff failed to have the Clerk dispatch the correct complaint required by 1608(a).  Def.'s Mem. Supp. 2nd Mot. Quash at 8.  As support for this aspect of its challenge to service, the Embassy relies on the plaintiff's prior statements in which he said that he sent his "new complaint" to the Embassy, which the Embassy construes to mean that the plaintiff instructed the Clerk of Court to dispatch an amended complaint, rather than the then-operative complaint originally filed in the case.  *Id.*  The plaintiff responds by noting that "[he] is not a lawyer nor is English his first language" and that the Embassy's argument stems from a misunderstanding attributable to his use of inartful language, and not to his failure to comply with §1608(a)(3).  Pl.'s Opp'n Def.'s 2nd Mot. Quash at 8.  Specifically, he notes, as of the date the Clerk of Court dispatched the package, on May 31, 2016, "the 'new [amended] complaint' was not yet done."  *Id.* at 8-9.

The plaintiff moved for leave to file an amended complaint on July 5, 2016, over a full month after the Clerk had dispatched the package to the Angolan Ministry of Foreign Affairs, on

May 31, 2016. As the plaintiff points out, the amended complaint was not the operative complaint at the time the package was sent, and likely did not even exist at the time he requested the documents be dispatched. Further, review of the context of the plaintiff's language in the brief on which the Embassy relies makes plain that the "new complaint" to which the plaintiff refers is the copy of the complaint he sent in his second attempt to serve process on the Embassy, not any amended complaint. Pl.'s Mot. Amend at 2, ECF No. 31 (explaining that plaintiff "requested the court to be allowed to make a new complaint" after his first complaint was quashed). As the original complaint was still the operative complaint at the time service was attempted and no evidence suggests that the Clerk of Court dispatched anything other than the proper complaint, this argument also fails.

### B. Plaintiff's Motions to Attach Property are Barred by the FSIA

The plaintiff has moved to attach various Embassy property on grounds that the property at issue is used for commercial activity. *See e.g.,* Pl.'s Mot. Attachment Bank Account at 2-3.[6] No evidence has been presented, however, that Angola has explicitly waived its immunity from prejudgment attachment. *See* 28 U.S.C. §1610(d)(1) (barring prejudgment attachment of property of a foreign state unless "the foreign state has explicitly waived its immunity from attachment prior to judgment"); *see also S & S Machinery Co.*, 706 F.2d at 416; *Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008)(finding that absent explicit waiver of immunity from attachment prior to judgment, "there is no basis for this Court to allow plaintiffs to proceed against [entity] under section 1610"). To overcome this hurdle, the plaintiff cites an excerpt from a document, which he identifies as a portion of a contract he entered into with the Embassy, without providing the document as a whole. *See* Aff. Of Luis De Sousa,

---

[6] The motions for attachment and their accompanying memoranda do not raise discrete legal issues as to the question of waiver of sovereign immunity and are, accordingly, addressed collectively.

dated June 28, 2016 ("Pl.s' June 2016 Aff.") Ex. 20, ECF No 28-1; Pl.'s Reply Supp. Mots. Attach. at 11-13, ECF No. 29. The excerpted language states:

> It is the intention of the Parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the law of the commonwealth of Virginia, without regard to jurisdiction in with [sic] any action or special proceeding may be instituted.
>
> …
>
> If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is unavailable or is not successful in resolving the entire dispute, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the Commonwealth of Virginia. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the Commonwealth of Virginia.

Pl.'s June 2016 Aff., Ex. 20. Even assuming that the excerpt is derived from a binding agreement between the plaintiff and the Embassy, nothing in this language amounts to an explicit waiver of immunity from prejudgment attachment. Indeed, the words "immunity" and "attachment" do not appear in the excerpt at all. Instead, the excerpted language appears to concern choice of law and agreements to arbitrate. Such clearly irrelevant language does not constitute an explicit waiver of immunity as required by the FSIA's § 1610(d)(1).[7] Accordingly, the plaintiff's remaining motions for attachment of any Embassy property are denied.

## IV. CONCLUSION

The plaintiff has properly effected service under the FSIA, 28 U.S.C. §1608(a)(3). Consequently, the Embassy's Second Motion to Quash is denied. At the same time, because the plaintiff has not established that the Embassy explicitly waived immunity from prejudgment

---

[7] The Embassy also argues that the plaintiff's attachment motions are "expressly prohibited by the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502." Def.'s Mem. Opp'n Pl.'s Attach. Mots., at 3, ECF No. 24. This argument need not be addressed since the plaintiff's motions to attach Embassy property are resolved on other grounds.
.

attachment, as required by the FSIA, 28 U.S.C. §1610(d), his motions to attach various property purportedly belonging to the Embassy are also denied.

An order consistent with resolution of these and other motions discussed in this Memorandum Opinion will be entered contemporaneously.

**DATE:** January 9, 2017

_____
BERYL A. HOWELL
Chief Judge