**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LUIS DE SOUSA,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>EMBASSY OF THE REPUBLIC OF<br>ANGOLA,<br>　　　　　　　Defendant. | Civil Action No. 16-367 (BAH)<br><br>Chief Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

　　　　The plaintiff, Luis de Sousa, who is proceeding *pro se,* filed this action seeking

$360,000,000.00 in damages from the defendant, the Embassy of the Republic of Angola, for

breach of contract, defamation, and intentional infliction of emotional distress.  *See* Pl.'s

Proposed Third Amended Complaint ("Prop. Third. Am. Compl.") ¶¶ 44--47, 63, ECF No. 53-1.

After the Court's resolution of nine initial motions, *see De Sousa v. Embassy of Angl.*, 2017 U.S.

Dist. LEXIS 2750 (D.D.C. Jan. 9, 2017), the defendant has filed the pending Motion to Dismiss

for lack of subject matter jurisdiction and for failure to state a claim, Def.'s Mot. Dismiss

("Def.'s Mot."), ECF No. 49; Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 49-1,

and in response, the plaintiff seeks a third amendment to his complaint, Pl.'s Third Mot. Amd.

Compl. ("Pl.'s Mot. Amd."), ECF No. 53; *see also* Pl.'s Reply Supp. Mot. Amend ("Pl.'s

Reply"), ECF No. 55.  For the reasons set forth below, the defendant's motion to dismiss is

granted and the plaintiff's motion is denied as futile.

## I.    BACKGROUND

Summarized below are the factual allegations made in the Proposed Third Amended

Complaint, which is difficult to understand in places but nonetheless assumed to be true for the

purpose of resolving the pending motions.[1]

In July 2015, the plaintiff began performing and supervising construction work on the

Embassy of Angola at the request of the Ambassador, whose children had been friends with the

plaintiff "from a young age."  Prop. Third Amd. Compl. ¶¶ 11–14, 38.  When submitting

invoices, some of which were billed by "[the plaintiff's] business, Luenda Group LLC," the

plaintiff artificially inflated his costs to receive a "commission," which commission ultimately

totaled $14,000..  *Id.* ¶¶ 12, 17–18.  The Ambassador approved the commission payments, but

"no one was suppose[d] to know" about the commissions or the details of the invoices.  *Id.* ¶ 12--

13.

After a number of "strange and complicated transaction[s]" among the plaintiff's

business Luenda Group LLC, the defendant, and a subcontractor, *id.* ¶¶ 13–18, the Ambassador

ended the arrangement and asked the plaintiff to repay his "commission" because the

Ambassador "did not want the employees at the embassy to think that he doing something

unethical," *id*. ¶21–22.  This request strained the plaintiff's finances and the parties' relationship,

which was then further damaged when the Ambassador's daughter "Mrs. Guerreiro," who was

an Embassy employee, refused to give the plaintiff a signed contract for the work he had been

doing because he had been "stealing" from the Embassy.  *Id.* ¶¶ 24–25.  The relationship reached

---

[1]    The Proposed Third Amended Complaint generally adds certain factual allegations absent from the two
prior iterations of the complaint, but these proposed further amendments do little to elucidate the actual claims the
plaintiff intends to raise.  Rather than contain a "short and plain statement of [his] claim[s]" as required by Federal
Rule of Civil Procedure 8(a), the plaintiff's complaint is twenty-six pages of run-on narrative paragraphs followed
by a prayer for relief.  *See* Prop. Third Amd. Compl.  The claims the plaintiff likely intends to raise are nevertheless
considered to the extent they can be deciphered, given the liberal interpretation courts are required to accord to *pro
se* filings.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

a total breakdown in late September 2015, when Mrs. Guerreiro's husband, whom the parties do

not dispute was not an Embassy employee, "pushed and verbally attacked [the plaintiff's] wife

and ma[de] death threats toward [the plaintiff]" at a social event because the plaintiff "hadn't

answered [his] phone," when "Mr. Guerreiro" had called him earlier.  *Id.* ¶ 29.[2]

The plaintiff continued to seek payment for his work after the pushing and verbal

altercation incident, but the Ambassador, the Guerreiros, and the Ambassador's other daughter,

"Ms. Claudia," who was also an Embassy employee, began a "very brutal campaign" involving

"intimidation and threats" against the plaintiff causing him "extensive emotional distress," and

"defamation" that injured the plaintiff's professional reputation.  *Id.* ¶¶ 26–29, 30, 37–39.  This

campaign apparently began a few weeks after the incident, when, at a meeting with the plaintiff,

Mrs. Guerreiro and "the financier of the Embassy" called him "derogatory names," "threatened"

him, and berated him for "overcharging the Embassy."  *Id.* ¶ 26.  The plaintiff, upset by the

meeting as well as his ongoing difficulties getting paid, went to the Ambassador, who turned him

away and told him that any financial dispute was between him and the subcontractor.  *Id.* ¶ 27.1.[3]

Frustrated with the situation, the plaintiff somehow "blocked . . . any contact" with the Embassy.

*Id.*

After some time, the plaintiff was contacted by the Ambassador, who "apologize[d]" to

the plaintiff, promising him a "newer, bigger contract" to make up for cancelling the

"commission," and the plaintiff agreed to do more work on the Embassy.  *Id.* ¶ 27.2.  This

improved relationship apparently did not last.  The plaintiff returned to the Embassy in January

2016 to begin his work, and on January 11, 2016, had a meeting with Ms. Claudia and her

---

[2]    The plaintiff asserts that his wife performed unpaid work for the Embassy in 2013, Prop. Third Amd. Compl. ¶¶ 31–35, but the plaintiff's wife is not a party to this suit.

[3]    The Proposed Third Amended Complaint contains two paragraphs labeled "27," which the Court refers to as ¶ 27.1 and ¶ 27.2, respectively.

husband, who threatened him for trying to get a signed contract and "allud[ed] to his death." *Id.*

¶ 28.  Despite this conduct, the meeting ended with the two Embassy employees promising to

help the plaintiff get a signed contract. *Id.* ¶ 28.  The stress of these events caused the plaintiff

health issues and "a loss of business investment" because of his tarnished reputation. *Id.* ¶¶ 40,

47, 50.  At some unspecified time during these events, the Ambassador "one time . . . threatened

[the plaintiff] with death." *Id.* ¶ 30.

In February 2016, the plaintiff filed suit in this Court, seeking $360,000,000.00 for

breach of "verbal contract" and related injury, *id.* ¶ 46, "emotional distress," *id.* ¶¶ 44, 51, 57,

and "defamation," *id*. ¶¶ 42, 60.  Three weeks later, Mr. Guerreiro flew to Angola and allegedly

threatened the plaintiff's brother with "serious consequences" if the plaintiff did not drop the

case, and "a few weeks later," the plaintiff's brother-in-law lost his government job. *Id.* ¶ 39.  At

this point, the plaintiff "began to take" the conduct of the Embassy employees "seriously."  Pl.'s

Reply at 12.

Mr. Guerreiro's trip prompted the plaintiff to amend his complaint, to include

information about what had happened to his brother-in-law in Angola and to provide greater

detail about his previously-raised allegations. *See* Order, dated May 27, 2016 (granting plaintiff's

motion to amend complaint "as a matter of course").  After resolving a series of motions from

both parties, including two defense motions to quash for insufficient service of process,

plaintiff's motion for leave to amend the complaint, and five motions by the plaintiff to attach

embassy property, *see De Sousa*, 2017 U.S. Dist. LEXIS 2750, the defendant filed the instant

motion to dismiss on grounds that the plaintiff's suit was barred because he failed to comply with

local business registration requirements and because he failed to allege sufficient facts to support

his tort claims.   Def.'s Mem. at 3–15; *see also* Def.'s Opp'n Pl.'s Mot. Amd. ("Def.'s Opp'n") at

4–11, ECF No. 54.  The Court then advised the plaintiff of the consequences of failure to respond to a dispositive motion or to dispute facts asserted by the movant, as required by *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  *See* Order, dated January 25, 2017.  In response to the motion to dismiss, the plaintiff filed what appears to be both an opposition to the motion to dismiss and a motion for leave to amend the complaint for a third time.  *See generally* Pl.'s Mot. Amd.  Both motions are now ripe for review.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist . . . to hear each dispute.'"  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quotation omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (internal quotation marks and citations omitted).  The court need not accept

inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged

in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235,

242 (D.C. Cir. 2002).  In evaluating subject-matter jurisdiction, the court may look beyond the

complaint to "undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*,

974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

"complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009))).  A claim is facially plausible when the plaintiff pleads factual

content that is more than "'merely consistent with' a defendant's liability," and "allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Rudder*

*v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not

required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and

conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds"

for "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the]

claims across the line from conceivable to plausible," *id.* at 570; *see Banneker Ventures LLC v.*

*Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer

possibility that a defendant has acted unlawfully . . . .").  Thus, "a complaint [does not] suffice if

it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557) (second alteration in original).

As when considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept all factual allegations in the complaint as true for the purposes of the motion, "even if doubtful in fact," *Twombly*, 550 U.S. at 555; *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015), "but is not required to accept the plaintiff's legal conclusions as correct," *Sissel v. U.S. Dep't Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).  In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### C.  Motion for Leave to File an Amended Complaint

"[T]he grant or denial of leave to amend is committed to a district court's discretion . . . ." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  While the court should freely grant leave to amend a complaint when justice so requires, *see* FED. R. CIV. P. 15(a)(2), it may deny a motion to amend in the case of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. U.S.,* 677 F.3d 471, 480 (D.C. Cir. 2012); *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) ("With little chance of a successful Title VII claim, the

district court did not abuse its discretion in concluding [the plaintiff] was not entitled to add the claim to his complaint.").

## III.  DISCUSSION

The plaintiff's *pro se* complaint, liberally construed, raises three claims: (1) breach of implied contract, Prop. Third Amd. Compl. ¶ 46; (2) intentional infliction of emotional distress, *id*. ¶¶ 44, 66; and (3) defamation, *id.* ¶¶ 56, 60.  The legal sufficiency of each claim asserted against the defendant, a foreign embassy, which is presumptively immune from suit under the doctrine of foreign sovereign immunity, *see* Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, is assessed *seriatim* below.

### A.  THE PLAINTIFF'S BREACH OF CONTRACT CLAIM

The defendant concedes that the FSIA's "commercial activity exception," which waives foreign sovereign immunity in "action[s] based upon a commercial activity carried on in the United States by [a] foreign state," 28 U.S.C. § 1605(a)(2), operates to waive the defendant's immunity from the plaintiff's contract claim.  Def.'s Surreply to Pl.'s Mot. Amend ("Def.'s Surreply") at 5 n.9, ECF No. 62.  Consequently, the defendant does not dispute that the Court may exercise jurisdiction over the contract claim under 28 U.S.C. § 1330, which grants federal courts jurisdiction over claims for which the FSIA provides a waiver of foreign immunity.

Nonetheless, the defendant raises two other challenges to the contract claim: first, the defendant asserts that Luenda Group LLC is the "real party in interest" but is not a party to this suit, in contravention of Federal Rule of Civil Procedure 17, Def.'s Opp'n at 3–6; Def.'s Surreply at 2, and, second, the defendant contends that the D.C. "door-closing statute," bars the plaintiff's suit.  Def.'s Surreply at 1–5 (citing D.C. Code § 47-2855.02–.03).  The defendant's first argument fails as a matter of law, but the second argument is correct.

A suit must be brought by the "real party in interest," which is the party that, under the governing substantive law, is entitled to enforce the rights asserted. *Cherry v. FCC*, 641 F.3d 494, 497 (D.C. Cir. 2011) (citing FED. R. CIV. P. 17). D.C. law "makes no legal distinction between the identity of a sole proprietorship and its owner." *Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702 *5 n.3 (D.D.C. June 15, 2007) (citing *Pritchett v. Stillwell*, 604 A.2d 886, 889 (D.C. 1992) (holding the identity of a sole proprietorship is "the same as that of its owner"); *see also* 65 C.J.S. Names § 13 (noting sole proprietorship and proprietor "are but two names for one person"). The parties agree that the Luenda Group LLC is the plaintiff's "sole proprietorship," Pl.'s Reply at 4, 10; Def.'s Surreply at 2, and given that there is "no legal distinction between" them, the plaintiff may bring this suit in his own name. *See York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 403 (7th Cir. 2011) (noting that a sole proprietorship and its proprietor are "two names for the same person," and, when bringing suit, the name of "[e]ither will do; both are better"); *see also Pritchett,* 604 A.2d at 888 (changing the listed defendant from sole proprietorship to the name of the sole proprietor "does not change [the] party against whom a claim is asserted").

Being a sole proprietor does not save the plaintiff's contract claim, however, as the D.C. door-closing statute, D.C. Code § 47-2855.02–.03, bars jurisdiction over the plaintiff's contract claim. *See* Def.'s Surreply at 1–5. This statute requires that any "person" operating a "sole proprietorship" or other business entity, who "carries on, conducts, or transacts business in the District of Columbia under any trade name shall register that trade name" with the District. D.C. Code § 47-2855.02.[4] Failure to comply with this registration requirement bars access to the

---

[4] The defendant also initially argued that the plaintiff's suit is barred under the door-closing statute because it is an unregistered corporation, Def.'s Mem. at 5–9, but in light of the plaintiff's proposed third amended complaint and clarification of the status of the plaintiff's company, now concedes that "Luenda Group LLC" is in fact a sole proprietorship, Def.'s Surreply at 2.

courts in this jurisdiction to the unregistered person or business entity under the D.C. door-closing statute.  This statute states that "[n]o person carrying on, conducting, or transacting business under any trade name shall be entitled to maintain *any suit* in *any of the courts of the District of Columbia* until the person has properly completed the registration as provided for [by § 47-2855.02]."  *Id.* § 47-2855.03 (emphasis added).  If that "person" brings suit in federal court, the court lacks subject matter jurisdiction and should dismiss without prejudice.  *Landmark Health Sols., LLC v. Not for Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 134 (D.D.C. 2013) (noting that a party's "failure to register" under a D.C. door-closing statute strips the Court of "subject matter jurisdiction" (citing *Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696, 699 (D.C. Cir. 1992)); *Hunter Innovations v. Travelers Indem. Co. of Connecticut*, 605 F. Supp. 2d 170, 171 (D.D.C. 2009) (dismissing case without prejudice for failure to register under D.C. Code § 47-2855.02).

Courts are required to apply door-closing statutes in diversity actions on the principle that where "one is barred from recovery [for a state law claim] in the state court, he should likewise be barred in the federal court."  *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949); *see also Tel. & Data Sys., Inc.*, 966 F.2d at 699 (applying the D.C. door-closing statute in diversity jurisdiction under *Woods*).  This reasoning compels the same result in this case, which is analogous to a diversity case by requiring resolution of state law claims brought against a diverse party, in this case a foreign sovereign.  Indeed, the FSIA makes clear that foreign sovereigns are to be held "liable in the same manner and to the same extent as a private individual under like circumstances" in cases brought pursuant to an FSIA waiver.  *See* 28 U.S.C. § 1606.

The parties agree that the plaintiff is doing business in the District as a sole proprietorship under the trade name Luenda Group LLC, and the plaintiff does not dispute the defendant's

assertion that he has failed to register "Luenda Group LLC" in the District of Columbia in any

way. Indeed, the Court takes judicial notice that the District of Columbia has no record of any

trade name containing the word "Luenda" being filed at any time with the District. *See Business

Filings Search*, D.C. Department of Consumer and Regulatory Affairs, https://corponline.dcra.dc

.gov/Home.aspx, (last visited July 25, 2017).[5]  The D.C. door-closing statute therefore bars "any

suit" by the plaintiff for his breach of contract claim and deprives the Court of subject matter

jurisdiction over this claim.[6]

## B.  THE PLAINTIFF'S TORT CLAIMS

The FSIA provides a waiver of foreign sovereign immunity over certain tort claims,

including intentional infliction of emotional distress, *see* 28 U.S.C. § 1605(a)(5), but excludes

defamation claims, *El-Hadad v. U.A.E.*, 216 F.3d 29, 35 (D.C. Cir. 2000).  Thus, the plaintiff's

defamation claims are barred by the FSIA.[7]

Under D.C. law, a plaintiff alleging intentional infliction of emotional distress must

demonstrate: "(1) extreme and outrageous conduct on the part of the defendant which (2)

---

[5]     A court may take judicial notice of public registration databases. *See Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 808 (7th Cir. 2009) ("[A] court may take judicial notice of [a publically-available] registry."); *see also Shafer v. Children's Hosp. Soc'y,* 265 F.2d 107, 110 (D.C. Cir. 1959) (taking judicial notice of the District of Columbia "Register of Wills").

[6]     The defendant argues that *all* of the plaintiff's claims are barred by the door-closing statute, which bars a party from bringing "*any suit* in any of the courts of the District of Columbia," without limitation to only certain types of claims.  Def.'s Surreply at 5 n.9 (quoting § 47-2855.03).  The Court need not address whether the D.C. door-closing statute applies to tort claims for damages allegedly suffered by the plaintiff personally arising from his business dealings with the defendant, since his defamation and emotional distress claims are dismissed on other grounds.

[7]     To the extent the plaintiff's complaint may be construed to base his tort claims on the same "commercial activity" giving rise to his contract claim and thereby cloaked by the FSIA's immunity exception for such activity, § 1605(a)(2), his tort claims would then be subject to the same bar required by the D.C. door-closing statute as his contract claim.  Further, the plaintiff's apparent effort to assert a negligent infliction of emotional distress claim, *see, e.g.,* Pl.'s Reply at 15-19 (labelling discussion "Not intentional emotion Distress" but the subheading "Intecional [sic] And Recklessly Emotion Distress"), falls far short.  To make a negligent infliction of emotional distress claim under D.C. law, a plaintiff must allege a "special relationship" between the parties that gives rise to a legal duty to protect "the plaintiff's emotional well-being," *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 818 (D.C. 2011), and the only "special relationship" identified by the plaintiff is his friendship with Embassy employees.  Pl.'s Reply at 15.  The plaintiff confuses an interpersonal relationship with a legal relationship that creates a duty to protect the plaintiff's emotional well-being.

intentionally or recklessly (3) causes the plaintiff to suffer severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (internal quotation omitted). The defendant only challenges the sufficiency of the plaintiff's allegations with respect to the first prong. *See* Def.'s Mem. 13–14; Def.'s Opp'n at 10–12.

The "outrageousness" requirement "is not an easy one to meet." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998). To qualify, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Browning v. Clinton*, 292 F.3d 235, 248 (D.C. Cir. 2002). "[I]nsults, indignities, [and] threats," without more, do not constitute intentional infliction of emotional distress. *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993). When determining whether conduct is extreme and outrageous, the court must consider the "specific context in which the conduct took place," including "the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place." *Id.* The threshold finding of "extreme and outrageous conduct" is a question of law. *Ortberg*, 64 A.3d at 164.

The plaintiff identifies several instances of conduct that he believes support his emotional distress claim. First, he points to the conduct of Mr. Guerreiro, who allegedly went to Angola at the request of the Ambassador and somehow had the plaintiff's brother-in-law fired from a government position after threatening "consequences" if the plaintiff did not drop this suit. Pl.'s Reply at 12. Yet Mr. Guerreiro is not even an employee of the defendant, so attributing his conduct to the defendant is a stretch. Even if Mr. Guerreiro is viewed somehow as an agent of the defendant, and in fact the plaintiff's brother-in-law was terminated, the plaintiff's allegations

12

offer little to suggest anything more than coincidence between Mr. Guerreiro's trip and the family member's termination abroad

Second, the plaintiff alleges that the defendant "was aware" of the plaintiff's expenses working on the Embassy and, when told about "losing [his] money," the defendant merely advised the plaintiff to talk to one of the subcontractors to be compensated, since the defendant believed that it had satisfied its obligations. Pl.'s Reply at 19. Even if assumed to be true that the defendant denied liability for unpaid invoices, after the plaintiff's willing participation in the "strange and complicated transaction[s]" that give rise to his claim, Prop. Third Amd. Compl. ¶ 12, this allegation simply does not reach the requisite level of outrageousness to support a tort claim of intentional infliction of emotional distress. The plaintiff cites no authority to support a finding to the contrary and, given the plaintiff's own conduct in padding invoices for commissions allegedly authorized by the Ambassador, the defendant's asserted callousness toward the plaintiff's financial difficulties is not extreme or outrageous.

Third, the plaintiff specifically alleges two meetings, held almost three months apart in October 2015 and January 2016, during which he was berated, "humiliated," and "threatened" by two employees for allegedly "stealing" from the Embassy. Prop. Third Amd. Compl. ¶¶ 26, 28. Calling the plaintiff names and even threatening the plaintiff may have indeed upset him, but "inflict[ing] some worry and concern" does not bring the conduct to the level of "extreme and outrageous," *Ortberg*, 64 A.3d at 164, and these "insults, indignities, [and] threats," even if the meetings did in fact occur as the plaintiff alleges, are simply not sufficient to support the plaintiff's claim, *King*, 640 A.2d at 668.

Finally, the plaintiff has alleged that the Ambassador "one time" made a death threat against him, Prop. Third Amd. Compl. ¶ 30, and Ms. Claudia "allud[ed] to [his] death" while

13

berating him for allegedly stealing from the Embassy during their January 2016 meeting, *id.* ¶ 28.  Def.'s Opp'n at 11–12.  Threats themselves do not constitute extreme and outrageous conduct, *King*, 640 A.2d at 668, but may be when a person would take the threat seriously in light of the defendant's conduct and the parties' relationship, *compare,e.g., Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C. 1995) (death threat was extreme and outrageous because it was made by an individual who repeatedly "accidentally" dropped a gun while making threats); *Homan*, 711 A.2d at 820 (death threat from an individual who had stalked and harassed the plaintiff for a year both at the plaintiff's home and place of business could be found to be "outrageous"), *with Otano v. Ocean*, No. CV 13-01605 RSWL (JJCx), 2013 U.S. Dist. LEXIS 77219, at *14 (C.D. Cal. May 30, 2013) (death threat that defendant insisted was "for real" was not "extreme and outrageous" in context of the parties' ongoing business relationship); *Hartwell v. Sw. Cheese Co., L.L.C.*, Civ. No. 15-1103 JAP/GJF, 2017 U.S. Dist. LEXIS 10054 at *59 (D.N.M. Jan. 23, 2017) (co-employee's statement that "he wanted to kill Plaintiff" was "more like an empty threat or an expression of dismay or even banter" between co-workers than a "serious death threat").

The plaintiff's argument on this point fails for the plain reason that he admits that he did not take the alleged statements by the Ambassador and Ms. Claudia seriously, Pl.'s Reply at 12 (noting plaintiff only "began to take their threats and intimidations seriously" after his brother-in-law was fired from his job).  This fact is further demonstrated by his willingness to maintain contact with and work with the Embassy after the alleged threats were made.  Thus, these alleged threats fail to meet the plaintiff's "high burden" of alleging conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

14

atrocious, and utterly intolerable in a civilized community." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 209 (D.C. 2017).

In the alternative, the plaintiff argues that even if he has "[n]ot adequately" pled his claims, his suit should not be dismissed so that he can raise claims in the future that he will have "learned through the flexible discovery process." Pl.'s Reply at 21. The plaintiff misunderstands the purpose of discovery. His complaint must allege sufficient facts that, if proven true, would justify his claim for relief. FED. R. CIV. P. 12(b)(6). The discovery process is meant to provide an opportunity for a plaintiff to find factual support for those allegations, not to give a plaintiff free reign to fish for evidence of other claims he may have against an opposing party. As the purported victim of intentional infliction of emotional distress, the plaintiff should already know a good amount of detail about the conduct that assertedly caused him distress.

## IV.   CONCLUSION

The Court is "not expected to assume the role of advocate" for the plaintiff. *Pinson v. U.S. Dep't of Justice,* 177 F. Supp. 3d 56, 84 (D.D.C. 2016). Even construing the plaintiff's *pro se* filings liberally, the Court lacks subject-matter jurisdiction over both the plaintiff's contract claims, because he has not registered his trade name as required by D.C. law, and over his defamation claim, because the claim is barred by sovereign immunity. While the Court may have jurisdiction to hear his intentional infliction of emotional distress claim, the plaintiff has failed to allege sufficient facts to support this claim, and his repeated amendments to his complaint have failed to correct these defects, which are likewise not remedied by his proposed third amended complaint. Accordingly, the defendant's motion to dismiss is granted and the plaintiff's motion to amend is denied as futile. *Foman*, 371 U.S. at 182.

An appropriate Order accompanies this Memorandum Opinion.


Date: July 27, 2017

                                     _____

                                     BERYL A. HOWELL
                                     Chief Judge